1    BRIAN K. NAGATANI (CSB NO. 208632)
     HIXSON NAGATANI LLP
2    2021 The Alameda, Suite 240
     San Jose, CA 95126
3    Telephone: +1.408.486.9955
     Facsimile: +1.408.727.6617
4    brian@hnemploymentlaw.com

5
     Attorneys for Defendant,
6    PSIQUANTUM, CORP.

7

8                      UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA
                             SAN JOSE DIVISION
10

11   ROMIT CHAKRABORTY,                    Case No.: 5:25-cv-03374-NW

12                          Plaintiff,     **JOINT CASE MANAGEMENT
                                           STATEMENT & [PROPOSED] ORDER**
13          v.

14   PSIQUANTUM, CORP.,

15
                            Defendant.
16

17

18

19

20

21

22

23

24

25

26

27

28

1    The parties to the above-entitled action jointly submit this JOINT CASE MANAGEMENT

2    STATEMENT & [PROPOSED] ORDER pursuant to Civil Local Rule 16-9 and the Standing

3    Orders of the Court, including the Standing Order for All Civil Cases Before District Judge Noël

4    Wise.

5    **1.    JURISDICTION AND SERVICE**

6    Subject matter jurisdiction exists under 28 U.S.C. § 1331 because Plaintiff asserts claims

7    under Title VII, 42 U.S.C. § 2000e et seq.; the Court may exercise supplemental jurisdiction over

8    related state-law claims under 28 U.S.C. § 1367. Venue is proper in this District and Division under

9    28 U.S.C. § 1391(b) and 42 U.S.C. §2000e-5(f)(3). There are no issues regarding personal

10   jurisdiction or service; no additional parties remain to be served at this time.

11   **2.    FACTS**

12   **Plaintiff's Position.** Plaintiff asserts that during his employment he objected to

13   national-origin discrimination and visa-based retaliation, activity protected by Cal. Gov. Code

14   § 12940(h) **and** Lab. Code § 1102.5**.** On December 10, 2024, Plaintiff was terminated in an

15   unscheduled meeting; his work laptop was confiscated, and digital access revoked the same day.

16   Plaintiff states he was provided an unsigned termination memo citing "performance and teamwork

17   deficiencies," and that no "insubordination" rationale was articulated at that time; Plaintiff asserts

18   that he first learned of any "insubordination" rationale on April 2, 2025, in state-court proceedings

19   related to his TRO request. Beginning in July 2024, Mr. Kakekhani communicated with Plaintiff by

20   phone and text regarding Plaintiff's application and start date and also contacted Prof. Laura

21   Gagliardi about expediting that start date. At a December 5, 2024 meeting which was ultimately left

22   unfinished, Mr. Kakekhani stated he had called former intern E. Osaro the prior evening. E. Osaro's

23   employment as an intern with the Defendant had ceased on Dec 3, 2024. Relevant communications

24   included after-hours calls and texts. Plaintiff further alleges discrimination based on national origin,

25   visa-based retaliation, reliance on material representations when relocating and commencing

26   employment, and resulting emotional distress and harm to professional relationships and

27   opportunities**.** Plaintiff asserts that he followed instructions as they were communicated to him and

28

Hixson
Nagatani LLP

was not insubordinate in any regard, and performed his job in a competent manner, and acted in accordance to the terms of employment laid out in the O-1A petition filed on their behalf by the Defendant. Plaintiff respectfully notes that there were no performance evaluations, progressive discipline, or even an Performance Improvement Plan during his six-week working stint with the Defendant.

*Recruiting & pre-hire communications.* Beginning in or about July 2024, Mr. Kakekhani initiated recruitment communications with Plaintiff via LinkedIn direct messages, followed by phone and text regarding the application and start date. On October 27, 2024 (the evening before Plaintiff's start), Mr. Kakekhani invited Plaintiff to a dinner that included a PsiQuantum employee; during that discussion Plaintiff learned of prospective staffing for the team. In the same general period, a UChicago staff scientist later hired by PsiQuantum contacted Plaintiff via LinkedIn regarding Plaintiff's job responsibilities and immigration (O-1A) status. Plaintiff contends these communications are relevant to his fraudulent-inducement claim and to whether a replacement was being pre-selected prior to or shortly after his start date; the parties will address scope through the ESI protocol and discovery. *Relevant communications included after-hours phone calls, SMS/iMessage, and LinkedIn direct messages. Plaintiff began work on October 28, 2024 and was terminated on December 10, 2024 as set out above.*

Defendant asserts that its actions toward Plaintiff were based on legitimate, nondiscriminatory/nonretaliatory reasons. Defendant asserts that during Plaintiff's brief period of employment, he repeatedly acted in an insubordinate fashion and consequently, the Company had no choice but to take the actions it did including, but not limited to, terminating Plaintiff's employment. Defendant did not make any misrepresentations to Plaintiff during the hiring process and in any event, the terms of his employment were contained in his offer letter. Finally, Defendant did not take any actions that would have impacted Plaintiff's professional relationships and/or future employment opportunities.

The principal factual issues in dispute are whether: (1) Plaintiff engaged in protected activity and if so, whether the Company took any action against him as a result of such protected

Hixson
Nagatani LLP

JOINT CASE MANAGEMENT STATEMENT
Case No. 5:25-cv-03374-NW

activity; (2) Plaintiff experienced any discriminatory conduct during his employment; (3) Defendant made any material misrepresentations during the hiring process; (4) Defendant took any actions to sabotage Plaintiff's professional relationships and future employment opportunities; and (5) the timing and content of the reasons stated for Plaintiff's termination, including whether an "insubordination" rationale was contemporaneously communicated or first raised months later.

## 3.    LEGAL ISSUES

Plaintiff states as follows: This case presents claims for retaliation under FEHA and Title VII (Yanowitz; Nassar), disparate-treatment discrimination under FEHA/Title VII analyzed under McDonnell Douglas, Labor Code § 1102.5 under the Lawson contributing-factor / clear-and-convincing same-decision framework, wrongful termination in violation of public policy, and fraudulent inducement / implied contract, with remedies including back pay, front pay or reinstatement, compensatory and punitive damages, and fees. Detailed argument is reserved.

Plaintiff does not assert standalone claims for intentional infliction of emotional distress or tortious interference against PsiQuantum in the operative complaint; emotional distress is sought as a remedy under Plaintiff's asserted claims. Nothing in this paragraph limits Plaintiff's right to seek emotional-distress damages under FEHA/Title VII and other asserted claims, or to seek leave to amend if discovery reveals non-privileged, third-party misconduct supporting an additional claim.

Defendant states as follows: The prominent legal issues in this case are whether: (1) Plaintiff was retaliated against in violation of the California Fair Employment and Housing Act and Title VII; (2) Plaintiff was discriminated against based on his national origin and immigration status; (3) Plaintiff was wrongfully terminated in violation of public policy; (4) Defendant fraudulently induced Plaintiff to join the Company and breached an implied contract; (5) Plaintiff experienced intentional infliction of emotional distress; and (6) Defendant tortiously interfered with Plaintiff's professional relationships and opportunities.[1]

In order to establish a *prima facie* case of retaliation, Plaintiff would need to establish that

---

[1] Plaintiff alleged a cause of action for defamation in a First Amended Complaint but the Santa Clara Superior Court did not accept the filing of that Complaint after it was removed to Federal Court by Defendant

Hixson
Nagatani LLP

3

he acted to protect his Title VII/FEHA rights, an adverse employment action was thereafter taken against him, and a causal link exists between the two events. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994).  In order to establish a *prima facie* case of national origin discrimination, Plaintiff would need to establish that he: (1) was a member of a protected class; (2) performed his job in a competent manner; (3) suffered an adverse employment action; and (4) the action occurred under circumstances suggesting discriminatory motive (i.e. person outside of the protected class was treated more favorably). *Gathenji v. Autozoners, LLC*, 703 F. Supp. 2d 1017, 1028 (E.D. Cal. 2010).

Upon establishing a *prima facie* case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory/nonretaliatory reason for its adverse employment action. If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination/retaliation. *Diaz v. Eagle Produce, Ltd.*, 521 F.3d 1201, 1207 (9th Cir. 2008).

Defendant asserts that in the event Plaintiff can establish a *prima facie* case of discrimination or retaliation based on any of his case theories, it had a legitimate, nondiscriminatory reason for terminating his employment and otherwise engaging in the conduct in which it did. Plaintiff contends that this reason is a pretext for discrimination.

In order to succeed with a claim for fraudulent inducement, Plaintiff must establish: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e. to induce reliance; (4) justifiable reliance; and (5) resulting damage.

In order to succeed with a claim for intentional infliction of emotional distress, Plaintiff must establish: (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) suffering of severe or extreme emotional distress by the plaintiff; and (3) the plaintiff's emotional distress is actually and proximately the result of the defendant's outrageous conduct. *Bragg v. E. Bay Reg'l. Park Dist.*, 2003 U.S. Dist. LEXIS 23423, at *23 (N.D. Cal. Dec. 19, 2003).

Finally, in order to succeed with a claim for tortious interference with professional relationships, Plaintiff must establish (1) the existence of a professional relationship; (2) intentional interference with that relationship; (3) by a third party; (4) accomplished through improper means for an improper purpose; (5) a causal effect between the interference and damage to the economic relationship; and (6) damages. *Americaone Payment Sys. v. First Am. Payment Sys., L.P.*, 2008 U.S. Dist. LEXIS 79462, at *5, fn. 3 (N.D. Cal. Aug. 26, 2008).

**4.    MOTIONS**

There are no prior or pending motions in this federal action.  The parties anticipate submitting a stipulated protective order and a stipulated ESI protocol consistent with the Northern District of California Model Orders.

**5.    AMENDMENT OF PLEADINGS**

Plaintiff intends to move for leave to file a Second Amended & Redacted Complaint under FRCP 15(a)(2) and Civ. L.R. 10-1 on or before 29 Aug 2025. Defendant reserves all rights.

**6.    EVIDENCE PRESERVATION**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and acknowledge their duty to preserve relevant information. Defendant represents it has issued a litigation-hold notice.

Enterprise systems. Plaintiff requests certification that, since December 12, 2024, Defendant has placed and maintained legal holds (or equivalent retention overrides) for: Microsoft 365 (Outlook/Exchange; Teams—including chats/meetings/files; OneDrive; SharePoint), Slack Enterprise Grid (channels, DMs, huddles/calls metadata), Zoom (cloud recordings and chats), ATS, Overleaf, HR-ticketing, and any generative-AI tools used for business purposes (e.g., ChatGPT—browser, API, or integrated apps). The certification should confirm that auto-deletion/expiration settings are suspended for relevant custodians/sources and that the hold reasonably covers BYOD/mobile devices used for work, with collection limited to work-related data.

Recruiting/hiring materials. To ensure preservation tailored to the claims and defenses, the hold should include recruiting and hiring communications and files relating to Plaintiff's role,

Hixson
Nagatani LLP

JOINT CASE MANAGEMENT STATEMENT
Case No. 5:25-cv-03374-NW

including job requisition and approval materials; role description/leveling and compensation/stock approvals; start-date/relocation timing; internal discussions concerning headcount and staffing metrics; recruiting notes and interview/offer communications; and communications with consultants or academic collaborators regarding Plaintiff's candidacy. (Preservation only; the scope of collection/production will be addressed in the ESI protocol.)

Mobile/app sources for A. Kakekhani. In addition, Plaintiff requests confirmation that Arvin Kakekhani's business mobile device(s) and telephone number(s) are under legal hold, including SMS/iMessage and business communications via WhatsApp/Signal/Telegram (or similar apps), and that carrier call-detail/billing logs are preserved for July 15–December 31, 2024 (or earliest available). The certification should confirm auto-delete/disappearing-message settings are disabled for relevant custodians/sources, and that the hold reasonably covers BYOD/mobile devices used for work, with preservation limited to work-related data.

Third-party preservation. Plaintiff will issue preservation notices to the University of Chicago (including Prof. Laura Gagliardi and relevant lab/departmental accounts) and the University of California, Berkeley (including Prof. Martin Head-Gordon and relevant lab/departmental accounts) for potentially relevant emails, shared-drive materials, and collaboration records for Jan 1, 2024–Jan 31, 2025, without prejudice to later Rule 45 process. For avoidance of doubt, the §19 certification requested below applies to the above enterprise/mobile sources.

In addition to the systems identified, Plaintiff requests confirmation that business communications conducted via social-media or messaging platforms are under legal hold for relevant custodians, including LinkedIn direct messages and posts in the July-Dec 2024 window. Defendant is amenable to meet and confer with Plaintiff regarding the scope and breadth of the requested hold/certification and steps it has taken to preserve relevant data.

## 7.    DISCLOSURES

The parties have made their initial disclosures as outlined in General Order Number 71 Initial Discovery Protocols and exchanged initial document productions.

## 8.    DISCOVERY

Hixson
Nagatani LLP

Plaintiff's proposal. The parties will exchange proposed custodian lists **and** data-source maps (Microsoft 365, Slack, Overleaf, Zoom, ATS, HR systems, and any generative-AI logs used for business purposes). The parties will meet and confer on whether fact discovery can close by **December 12, 2025,** in light of these milestones.

Plaintiff states that hiring-sequence ESI (recruiting communications by A. Kakekhani and others) is relevant to Plaintiff's fraudulent-inducement theory (intent, knowledge of falsity, reliance) and pretext.

Defendant opposes any expedited discovery or accelerated timeframe and requests that discovery be conducted in the regular course in accordance with Defendant's proposed timeframe outlined in Section 15, below.

**9.    CLASS ACTIONS**

This case is not a class action.

**10.    RELATED CASES**

There are no related cases or proceedings pending before another Judge of this Court, or before another court or administrative body at present. Plaintiff previously sought ex parte relief in state court; no such proceeding is currently pending.

**11.    RELIEF**

Plaintiff's Complaint seeks compensatory damages, emotional-distress damages, punitive damages, and legal and court-related costs. Plaintiff seeks the following:

• Back pay from the last day on payroll *(presently understood as March 11, 2025)* through judgment;

• Reinstatement or, in the alternative, three years' front pay;

• Restoration of approximately 20,000 stock options (or equivalent equity relief);

• Declaratory and injunctive relief; compensatory and punitive damages; pre-judgment interest; and attorneys' fees/costs as permitted by law.[2]

---

[2] Plaintiff asserts that in a video recorded meeting with Defendant's immigration counsel, Nathan Grow, on Dec 12, 2024, Grow corroborated that Plaintiff's O-1A nonimmigrant status

*(Footnote Continued)*

Hixson
Nagatani LLP

Defendant asserts that Plaintiff is not entitled to any damages in this lawsuit, as Defendant complied with all applicable laws, statutes, and regulations applicable to Plaintiff's claims. To the extent, however, any violation is found, Defendant is entitled to all defenses and offsets available to it under applicable law. Because the parties have not conducted discovery beyond that required by General Order Number 71, Defendant has not yet determined the degree, for example, to which Plaintiff failed to mitigate his damages or the degree to which he is claiming emotional distress.

**12.    SETTLEMENT AND ADR**

Plaintiff is open to mediation with a mediator assigned by the ADR Unit (including Ms. Kopeikin) and, if the parties elect private mediation, requests a retired administrative law judge with extensive employment-law experience especially where it intersects with immigration status exploitation. Plaintiff's position is that the parties will confer on ADR timing following the initial exchange of ESI custodian lists and data-source maps. **Plaintiff is amenable to scheduling ADR** without **conditioning it on completion of ESI custodian exchanges.**

Defendant believes that this case is most appropriate for a Mandatory Settlement Conference with a Magistrate Judge. If the case is assigned to mediation, Defendant is willing to participate in the Court-sponsored mediation program. Defendant believes that ADR can take place prior to additional discovery including prior to Plaintiff's request for ESI custodian lists and/or data-source maps.

The Court previously ordered the parties to complete ADR by September 25, 2025, but pending withdrawal of the assigned mediator, the parties are awaiting further order by the Court, post their August 1, 2025 conference with Jill Kopeikin.

**13.    OTHER REFERENCES**

Plaintiff identifies Prof. Laura Gagliardi (University of Chicago) and Prof. Martin Head-Gordon (UC Berkeley) as potential third-party witnesses. During Plaintiff's employment, Plaintiff observed internal video recordings in which Prof. Gagliardi appeared in a consulting or collaborative capacity, and there were discussions of possible joint DARPA grant proposals

---

makes the **last day on payroll** (including any severance) a material date for collateral immigration consequences; early ADR could mitigate these impacts.

involving her research group. Plaintiff understands that several former members of Prof. Gagliardi's group are now employed at PsiQuantum and that the company has announced plans to open a major location in Chicago. Following Plaintiff's termination notice on **December 10, 2024**, a graduate student from Prof. Gagliardi's group contacted Plaintiff regarding the termination before it was finalized. In addition, based on Prof. Head-Gordon's **January 6, 2025** email, Plaintiff understands there were pre-termination communications in which Prof. Gagliardi expressed dissatisfaction regarding Plaintiff. Plaintiff contests the factual and scientific basis of Professor Gagliardi's alleged dissatisfaction with the Plaintiff. Plaintiff includes this information to preserve the opportunity to seek discovery regarding the nature and timing of any collaborations, communications, or employment transitions involving Profs. Gagliardi and Head-Gordon, and, Professor Gagaliadri and PsiQuantum, for the period January 1, 2024 through Jan 31, 2025.

## 14.    NARROWING OF ISSUES

The parties do not believe that there are currently any issues that can be narrowed. Following the Court's resolution of any motion for leave to amend and resolution of Plaintiff's request for the parties' initial exchange of ESI custodian lists and data-source maps (see §§8, 19), the parties will meet and confer to identify issues appropriate for narrowing (e.g., authenticity stipulations or phased discovery subjects). Defendant does not believe any exchange of custodian lists/data-source maps needs to occur in order to determine whether there are any issues appropriate for narrowing.

## 15.    SCHEDULING

The parties propose the following schedule consistent with the timing in the Standing Order for All Civil Cases Before District Judge Noel Wise:

| Case Stage | Deadline (Plaintiff) | Deadline (Defendant) |
| --- | --- | --- |
| Close of fact discovery | January 4, 2026 | January 4, 2026 |
| Opening expert reports | February 8, 2026 | February 21, 2026 |
| Rebuttal expert reports | March 8, 2026 | March 20, 2026 |
| Close of expert | March 29, 2026 | April 10, 2026 |

Hixson
Nagatani LLP

| discovery | | |
|---|---|---|
| Deadline to file dispositive motions | April 19, 2026 | May 1, 2026 |
| Last day to hear dispositive motions | June 12, 2026 | June 25, 2026 |
| Joint pretrial conference statement | July 31, 2026 | August 13, 2026 |
| Pretrial conference | August 14, 2026 | August 27, 2026 |
| Trial | August 26, 2026 | September 8, 2026 |

**16.     TRIAL**

Plaintiff has demanded a jury trial.  The parties estimate trial will take 5-7 court days.

**17.     DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Plaintiff is an individual and identifies **no non-party interested entities or persons** under Civil L.R. 3-15. Defendant filed its Certification of Conflicts and Interested Entities or Persons on April 16, 2025.

**18.     PROFESSIONAL CONDUCT**

Plaintiff and Defendant's counsel have reviewed and will abide by the Guidelines for Professional Conduct for the Northern District of California.

**19.     DOCUMENT-PRESERVATION AND CERTIFICATION**

As clarified in §6, Plaintiff requests that Defendant certify in writing that, since December 12, 2024, it has placed and maintained legal holds (or equivalent retention overrides) for the following systems and categories: Microsoft 365 (Outlook/Exchange; Teams[Chats/Meetings/Files]; OneDrive; SharePoint); Slack Enterprise Grid (channels/DMs/huddles metadata); Zoom (cloud recordings/chats/video recordings); ATS; Overleaf; HR-ticketing; and any generative-AI tools used for business purposes (e.g., ChatGPT—browser, API, or integrated apps), with auto-deletion/expiration suspended for relevant custodians/sources and with the hold reasonably covering BYOD/mobile devices used for work,

Hixson
Nagatani LLP

1   limited to work-related data. Plaintiff further requests that the certification confirm that business

2   communications over LinkedIn DMs and SMS/iMessage/WhatsApp/Signal/Telegram are preserved

3   for relevant custodians (including Mr. Kakekhani).

4          Plaintiff requests that the certification should further confirm preservation of recruiting and

5   hiring communications/files relating to Plaintiff's role (including job requisitions/approvals; role

6   description/leveling; compensation/stock approvals; start-date/relocation timing; internal

7   headcount/staffing-metric discussions; recruiting notes; interview/offer communications; and

8   communications with consultants or academic collaborators regarding Plaintiff's candidacy).

9   Finally, the certification should confirm that Arvin Kakekhani's business mobile

10  device(s)/number(s) are under hold, including SMS/iMessage and business communications via

11  WhatsApp/Signal/Telegram (or similar apps), and that carrier call-detail/billing logs for those

12  numbers are preserved for July 15–December 31, 2024 (or earliest available), with

13  auto-delete/disappearing-message settings disabled for relevant custodians/sources. *(Preservation*

14  *only; collection/production to be addressed by the parties' ESI protocol or the Court.)* Defendant is

15  amenable to meet and confer with Plaintiff regarding the scope and breadth of the requested

16  hold/certification and steps it has taken to preserve relevant data.

17  **20.    OTHER MATTERS**

18         Plaintiff does not consent to jurisdiction of a magistrate judge.

19

20  Dated: August 12, 2025                 HIXSON NAGATANI LLP

21

22                                         By _____

23                                                 BRIAN K. NAGATANI

                                           Attorneys for Defendant,
24                                         PSIQUANTUM, CORP.

25  Dated: August _12_, 2025               By _____

26                                                 ROMIT CHAKRABORTY

27

28

1

CASE MANAGEMENT ORDER

2

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as

3

the Case Management Order for this case, and all parties shall comply with its provisions.

4

5

IT IS SO ORDERED.

6

7

 Dated:

8

_____

9

UNITED STATES DISTRICT JUDGE NOËL WISE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28